IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY R. WILSON, II,                )
                                       )
   Plaintiff,           )
                                       )
v.                                     )  Case No. 24-cv-518-RJD
                                       )
BLAKE SELLERS, *et al*,                )
                                       )
   Defendants.           )
                                       )

**ORDER**

**DALY, Magistrate Judge:[1]**

  Plaintiff Anthony R. Wilson, II, filed this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that resulted from his unfair punishment with indefinite lockdown and loss of privileges during his pretrial detention at Madison County Jail.   (Doc. 1; Doc. 19, p. 1).[2]   Following the preliminary review of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on a Fourteenth Amendment claim against Defendants Schmidt and Sellers for depriving Plaintiff of a protected liberty interest without due process of law by punishing him with indefinite lockdown and loss of privileges during his pretrial detention at Madison County Jail beginning on January 28, 2024.  (Doc. 19, pp. 3-5).  This matter is now before the Court on Plaintiff's various motions, to which the Court rules as follows.

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and final entry of judgment upon the parties' full consent pursuant to 28 U.S.C. Sec. 636(c) and Federal Rule of Civil Procedure 73. (Doc. 26).
[2] The Clerk is **DIRECTED** to update the docket sheet to reflect Plaintiff's full and correct name: Anthony R. Wilson II.

**Plaintiff's Motion to Enforce Compliance with Court Orders (Doc. 30), Motions for Order for Executory Judgment (Docs. 33 & 36), Motions in Reply to Doc. 31 (Docs. 37 & 38), Motion or Missive to the Court Requesting a Transfer of the Plaintiff to Another Facility (Doc. 39), and Motion for Status (Doc. 40)**

On September 3, 2024, Plaintiff filed a Motion to Enforce Compliance.  (Doc. 30).  Plaintiff asked the Court to order Defendants to produce their Initial Disclosures, which had been past due since August 26, 2024.  (Doc. 30).  The Court directed Defendants to respond to the motion on or before October 15, 2024.  (Doc. 31).  On October 9, 2024, Plaintiff filed a handwritten Motion for Order for Executory Judgment, stating that he had still not received Defendants' Initial Disclosures.  (Doc. 33).  Plaintiff argued he was prejudiced by Defendants' failure to produce their Initial Disclosures because it impeded the preparation of his motion for leave to amend his Complaint.  (*Id.*).  Per the Initial Scheduling Order, Plaintiff's deadline to move for an amendment of the Complaint was October 10, 2024.  (Doc. 28, p. 3).  On October 14, 2024, Defendants filed a response, representing that they produced their Initial Disclosures on that same day.  (Doc. 34).  Defendants did not provide an explanation for their delay in the production of their Initial Disclosures.  On October 23, 2024, Plaintiff filed a typed motion restating the allegations of his October 9, 2024, motion.  (Doc. 36).  It is unclear whether Plaintiff prepared that motion prior to the filing of Defendants' October 14, 2024, response.

On October 30, 2024, Plaintiff filed another handwritten motion titled "Motion in Reply to Document 31."  (Doc. 37).  Plaintiff complained about a two-week delay in receiving his legal correspondence, alleged that his mail was intentionally withheld, and asked the Court to order his transfer to a different facility within the Southern District of Illinois to "ensure fairness and safety." (Doc. 37, p. 2).  Plaintiff further stated that Defendants had not yet fully complied with the Court's Initial Scheduling Order in that they were still withholding certain documents.  Plaintiff attached

to his motions grievances as well as disciplinary notices, which were not Bate-stamped, and which Plaintiff alleged were omitted from Defendants' Initial Disclosures.   (Doc. 37, pp. 5-8 ).   Plaintiff sought sanctions for Defendants' alleged intentional withholding of his mail and for their failure to fully comply with the Court's Initial Scheduling Order in the form of a judgment in Plaintiff's favor without trial.   (Doc. 37, p. 3).   On October 31, 2024, the Court received Plaintiff's typed Motion in Reply to Document 31, which was identical to his October 30, 2024, handwritten motion.   (Doc. 38).

Thereafter, on November 4, 2024, Plaintiff filed a Motion or Missive to the Court Requesting a Transfer of the Plaintiff to Another Facility.   (Doc. 39).   Therein, Plaintiff stated that Lieutenant Paul Sarhage, a named defendant who was dismissed at the preliminary review of the Complaint, "threatened the interference of [Plaintiff's] filings and well-being."   (Doc. 39, p. 1).   Plaintiff explained that on October 25, 2024, he prepared his handwritten motion (Doc. 37), placed it in a sealed envelope, and gave it to Deputy Goodwin.   Plaintiff alleges that prior to handing his motion to Deputy Goodwin, Lieutenant Sarhage denied Plaintiff's request for copies of his motion because they were "handwritten," and instructed Plaintiff to rewrite it.   (Doc. 39, p. 2).   Plaintiff stated that after handing his handwritten motion to Deputy Goodwin, Lieutenant Sarhage threatened Plaintiff in front of other inmates.   Plaintiff did not provide any additional details as to the form of the threat.   He stated that he prepared typed copies of his prior motions to ensure they were properly received by the Court.   He asked that the Court order his transfer to a different facility.   On December 12, 2024, Plaintiff filed a motion for status as to his pending motions.   (Doc. 40).   The Court will first address Plaintiff's request for sanctions as to Defendants' alleged failure to produce their Initial Disclosures in a timely manner and then turn to

Plaintiff's request for transfer to another facility.

*Defendants' Production of Initial Disclosures*

The Federal Rules of Civil Procedure provide for sanctions, including the entry of a default judgment against a party who fails to comply with a court order for the production of discovery, Fed. R. Civ. P. 37(a)(2)(A).  However, entry of a default judgment as a form of discovery sanction is only warranted when any lesser sanction would be inappropriate and there is a clear showing of willfulness or bad faith on behalf of the disobedient party.  *See e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011); *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992) ("If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction.").  Further, local rules require that any discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37 "have attached to it or the accompanying memorandum a copy of the actual discovery documents that are the subject of the motion or, in the alternative, set out in the memorandum a verbatim recitation of each interrogatory, request, answer, response, and/or objection that is the subject of the motion."  SDIL-LR 26.1 (a)(4).

Here, Plaintiff alleges that Defendants withheld certain documents from their Initial Disclosures, but he does not attach those disclosures to his motion as required under the local rules.  Accordingly, the Court cannot confirm the accuracy of Plaintiff's allegations.  Even assuming, however, that Plaintiff had attached Defendants' Initial Disclosures to his motion, entry of a default judgment as a sanction would not be warranted.  Although Defendants did not serve their Initial Disclosures on time, they did so within the Court's extended deadline for providing a response to

Plaintiff's motion.  Plaintiff has failed to show that Defendants acted willfully or in bad faith.  Nor has Plaintiff shown that he has been unfairly prejudiced in a way that no other less severe sanction would be appropriate.  Plaintiff complains that the delayed production of documents inhibited his ability to timely move to amend his Complaint, but the Court has not denied Plaintiff's request for an extension of time to do so.  Further, Plaintiff insinuates that Defendants attempted to hide certain grievances to have the case dismissed on that ground.  However, the issue of exhaustion of administrative remedies has already been resolved in Plaintiff's favor in that Defendants did not file a motion for summary judgment on that issue by the deadline set by the Court, effectively forfeiting their relevant affirmative defense.  The Court has already entered a Scheduling Order, stating that the issue of exhaustion of administrative remedies has been resolved and lifting the previously imposed stay on discovery on the merits.  (Doc. 31, p. 1).

Because Defendants have now produced their Initial Disclosures and Plaintiff has failed to show that any documents are being withheld, Plaintiff's Motion to Enforce Compliance with Court Orders (Doc. 30) is **DENIED as moot**.  Plaintiff's motion for entry of default judgment against the Defendants as a sanction for their alleged failure to produce certain documents is **DENIED**.  Plaintiff, however, is granted leave to file a motion for leave to amend the Complaint up through and including **May 22, 2025**.  Plaintiff's Motion for Status is **GRANTED**.  The Clerk is **DIRECTED** to send Plaintiff a copy of this Order.

*Plaintiff's Request for Transfer to a Different Facility*

Plaintiff's request for a transfer to a different facility is construed as a motion for a preliminary injunction.  A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief.  *Mazurek v. Armstrong*,

520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)).    The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit."    *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).    Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction.    *Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).    As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning."    *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).    If Plaintiff meets her burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."    *Id.*    In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm " and "be the least intrusive means necessary to correct that harm."    18 U.S.C. § 3626(a)(2).

The Court will assume that Plaintiff has a reasonable likelihood of success on the merits of his case.    Turning to the second and third prongs of the analysis, however, the Court finds that Plaintiff does not set forth adequate grounds to support his transfer request or a finding that he will suffer irreparable harm without a preliminary injunction being issued.    The Constitution does not guarantee placement in a particular facility, and the Court is generally reluctant to interfere with placement decisions made by jail and/or prison officials.    *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992).    Plaintiff alleges that Lieutenant Sarhage "threatened the interference of

[Plaintiff's] filings and well-being," but does not provide the content of those threats or how those threats relate to this pending action.   He states that Lieutenant Sarhage denied his request for copies of his motion because they were "handwritten," and instructed Plaintiff to rewrite it, but this is insufficient to show an irreparable harm justifying transfer to a different facility.   Plaintiff also complains regarding a two-week delay in receiving legal correspondence, but this is not an unreasonable delay, and Plaintiff does not show Defendants' involvement in such alleged delay. Plaintiff expresses concerns that his legal correspondence has not been forwarded to the Court, but all motions Plaintiff lists in his Motion for Status have been received in a timely manner by the Court.   Accordingly, Plaintiff's request for transfer to a different facility is **DENIED**.

**Plaintiff's Motions to Appoint Counsel (Docs. 32 & 35)**

Plaintiff filed his second and third motions seeking recruitment of counsel.   (Docs. 32 & 35).   While there is no constitutional or statutory right to counsel for a civil litigant, under Section 1915(e), a district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Stroe v. Immigration and Naturalization Services*, 256 F.3d 498, 500 (7th Cir. 2001); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995).   When presented with a request to appoint counsel, a court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself.   *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

The Court previously denied Plaintiff's first motion for recruitment of counsel (Doc. 3) because Plaintiff had stated therein that he had not made any attempt to secure counsel on his own. (Doc. 18).   Plaintiff was instructed that if he chose to renew his request, he would need to

submit rejection letters from at least three attorneys to demonstrate that he has made reasonable efforts to obtain counsel on his own. (*Id.*). In his renewed motions, Plaintiff does not attach any rejection letter from attorneys, nor does he state whether he attempted to recruit counsel on his own. Because Plaintiff has failed to establish the first prong of the test, his Motions to Appoint Counsel (Docs. 32 & 35) are **DENIED**. If Plaintiff chooses to renew his request, he should submit rejection letters from at least three attorneys to demonstrate that he has made reasonable efforts to obtain counsel on his own.

### Conclusion

For these reasons, Plaintiff's Motion to Enforce Compliance with Court Orders (Doc. 30) is **DENIED as moot**. Plaintiff's Motions for Order for Executory Judgment (Docs. 33 & 36), Motions in Reply to Doc. 31 (Docs. 37 & 38), Motion or Missive to the Court Requesting a Transfer of the Plaintiff to Another Facility (Doc. 39), and Motions to Appoint Counsel (Docs. 32 & 35) are **DENIED without prejudice**. Plaintiff's Motion for Status (Doc. 40) is **GRANTED**. The Clerk is **DIRECTED** to send Plaintiff a copy of this Order. Plaintiff is granted leave up through and including **May 22, 2025**, to file a motion for leave to amend the Complaint.

**IT IS SO ORDERED**.

**DATED: April 22, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**