IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY R. WILSON, II,                      )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        Case No. 24-cv-518-RJD
                                            )
BLAKE SELLERS, *et al.*,                    )
                                            )
        Defendants.                         )

**ORDER**

**DALY, Magistrate Judge:**[1]

Plaintiff Anthony Wilson, II, filed this civil rights action pursuant to 42 U.S.C. § 1983 seeking monetary damages for alleged constitutional violations during his pretrial detention at Madison County Jail ("Madison County"). (Docs. 1 & 19). Following threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on a Fourteenth Amendment claim against Defendants Tom Schmidt and Blake Sellers for allegedly depriving Plaintiff of a protected liberty interest without due process of law by punishing him with indefinite lockdown and loss of privileges during his pretrial detention at Madison County beginning on January 28, 2024. (Doc. 19).

This case is now before the Court on Defendants' Motion for Summary Judgment. (Doc. 55). For the reasons explained below, Defendants' motion is **DENIED**.

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 26).

Page **1** of **13**

**Introduction**

On January 20, 2026, Defendants filed their Motion for Summary Judgment that contains a Statement of Material Facts with proper citation to the record in accordance with Local Rule 56.1. SDIL-LR 56.1(a); (Doc. 55, pp. 2-5). Defendants also served Plaintiff with a notice advising him of the consequences if he failed to respond to the motion and properly address its factual allegations. (Doc. 59). On March 12, 2026, Plaintiff filed a combined notice of change of address and response to the motion, dated March 8, 2026. (Doc. 62) Plaintiff represented that he was transferred to the Greenville Federal Correctional Institution, where he was deprived of his legal material. (*Id.*). Plaintiff also generally objected to Defendants' motion but did not specifically address their factual allegations or legal arguments. (*Id.*).

Plaintiff's response is untimely as it was filed more than two weeks after its due date. *See* SDIL-LR 7.01(b)(1)(A) (noting that the nonmoving party has 30 days from service to respond). Further, the response does not comply with Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 56.1, which require the non-moving party to specifically admit or deny the factual allegations contained in a motion for summary judgment. Fed. R. Civ. P. 56(c); SDIL-LR 56.1(g). While Plaintiff's deprivation of his legal material, if it occurred prior to the deadline to respond to Defendants' motion, could potentially excuse his failure to comply with the rules, Plaintiff neither specified the date that he was transferred to Greenville nor sought an extension of time to substantively address the motion. Accordingly, the Court finds that Plaintiff's failure to comply with the rules is not excused. All material facts set forth in Defendants' Statement of Material Facts are being deemed admitted unless they are unsupported by evidence in the record based on the Court's independent review. *See* SDIL-LR 56.1(g).

**Factual Background**

Plaintiff had been a pretrial detainee at Madison County since June 1, 2023. (Doc. 55, ¶ 1). In January 2024, Plaintiff was housed in the jail's E-South cell block. (*Id.* at ¶ 2). On January 28, 2024, correctional officers assigned to E-South were distributing jail-issued tablets and collecting a jail-issued electric razor assigned for shared use in the cell block. (*Id.* at ¶ 4). Plaintiff had access to the razor when it was provided to detainees in the unit. (*Id.* at ¶ 5). During that process, correctional staff discovered that a battery was missing from the electric razor assigned to E-South. (*Id.* at ¶ 6).

Sergeant Schmidt responded to the E-South cell block after staff discovered the missing battery. (*Id.* at ¶ 7). Batteries removed from razors were treated as contraband due to safety and security concerns within the jail. (*Id.* at ¶ 8). Sergeant Schmidt informed all detainees in E-South, including Plaintiff, that a battery was missing from a jail-issued electric razor and directed them to report to the dayroom. (*Id.* at ¶ 9). All detainees from E-South were confined in the dayroom while correctional officers conducted searches of detainees and cells. (*Id.* at ¶ 10). The missing battery was not recovered during the searches. (*Id.* at ¶ 11). Following the searches, the detainees in E-South cell block were notified that they were going on lockdown status because the battery had not been found. (*Id.* at ¶ 12). The lockdown applied to all detainees housed in E-South and was not limited to Plaintiff. (*Id.* at ¶ 13). Plaintiff testified that Schmidt was the one who announced the lockdown on January 28, 2024, telling the inmates that "we're taking this stuff away." (Doc. 55-2, p. 22). After the inmates, including Plaintiff, complained, Defendant Sellers spoke to them and confirmed the decision to impose a lockdown. (*Id.*). Sellers told Plaintiff that action needed to be taken because of razors being broken and batteries being removed, a recurring problem in the E-South cell block and other housing units. (*Id.* at ¶¶ 14-15).

Per the facility's policy, a lockdown was imposed whenever an infraction occurred. (*Id.* at ¶ 16). Plaintiff testified that the lockdown was a form of punishment imposed when there was a rule violation. (Doc. 55-2, p. 9). During the E-South lockdown, detainees did not initially receive razors or cleaning supplies, and meals were served on Styrofoam trays rather than the hard trays provided to detainees in the general population and brought to the detainees in their cells. (Doc. 55, ¶ 17). During the lockdown, Plaintiff was provided a mattress, blanket, a sheet, clothing, and running water. (*Id.* at ¶ 18). Following the initial period of lockdown, detainees were allowed one hour out of their cells per day on an individual basis (*Id.* at ¶ 19), but Plaintiff testified that during the initial three or four days of the lockdown, they were not allowed any out-of-the-cell time. (Doc. 55-2, p. 13). Plaintiff also testified that detainees in the general population were typically allowed free movement throughout their block the entire day from 7:30 to 10:30. (*Id.*). He further testified that after being unable to find the missing battery, Defendants did not thoroughly investigate or follow the necessary procedure but "chose to punish and strip" detainees of their privileges, as they were "all guilty." (Doc. 55-2, p. 9).

On February 1, 2024, Plaintiff submitted a grievance alleging that his Fifth, Eighth, and Fourteenth Amendment rights were violated as a result of a lockdown in the E-South housing unit. (Doc. 55 at ¶ 20). Within approximately thirty minutes of the grievance submission on February 1, 2024, Defendant Schmidt responded, advising that Plaintiff and other E-South detainees continued to receive one hour of dayroom access per day, including access to showers and telephones, in compliance with IDOC standards. (*Id.* at ¶ 21). The Court's independent review of the cited record shows that Schmidt also stated in the response: "You were in possession of contraband during the search, and a report was filed. Your rights are not being violated, and

privileges are just that, a privilege, and they can be taken away. . . Please consider this matter closed." (Doc. 55-5, pp. 38-39).

On February 2, 2024, Plaintiff submitted a grievance claiming that cleaning supplies and cleaning agents were not available to clean the showers in the E-South housing unit. (Doc. 55 at ¶ 22). On February 2, 2024, Jail staff responded, explaining that cleaning supplies were distributed to detainees daily, detainees were not authorized to receive gloves within the cell blocks, and shower curtains were routinely laundered on Fridays or replaced when repairs were necessary. (*Id.* at ¶ 23). At all relevant times, Plaintiff's grievances were timely reviewed and responded to in accordance with Madison County Jail policy. (*Id.* at ¶ 25).

Plaintiff alleges that he suffered mental and emotional distress as a result of the E South lockdown but does not allege that he sustained any physical injury arising from the lockdown. (*Id.* at ¶ 26). Plaintiff is currently prescribed medication, which he received after being referred to and seen by a psychiatrist. (*Id.* at ¶ 27). Plaintiff does not allege that the medication was denied or delayed and does not identify any physical injury associated with his mental health complaints, stating only that he does not feel "strong enough." (*Id.* at ¶ 28). The E-South lockdown that began on January 28, 2024, is no longer in effect. (*Id.* at ¶ 29). Based on Plaintiff's testimony, the lockdown lasted 30 or 31 days. (Doc. 55-2, pp. 29-30). He further testified that he cannot quantify the damages he seeks and indicated that he is leaving any determination of damages to the Court. (Doc. 55 at ¶ 30).

## Discussion

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Ruffin- Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). Further, a "nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, . . . automatically result in judgment for the movant"; the movant "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Legitimate Governmental Interest*

The Fourteenth Amendment prohibits deprivations of any constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Any "nontrivial punishment of a person not yet convicted" triggers the right to due process of law under the Fourteenth Amendment. *Holly v. Woolfolk*, 415 F.3d 678, 679-80 (7th Cir. 2005) (collecting cases). Unless he receives notice and

an opportunity to be heard, a pretrial detainee cannot be placed in segregation or lockdown segregation as punishment for a disciplinary infraction. *Rapier v. Harris*, 172 F.3d 999, 1004-05 (7th Cir. 1999).

A pretrial detainee is still subject to some restrictions on his liberty. *Rapier*, 172 F.3d at 1003. The government may take reasonable steps to effectuate pretrial detention, including those steps necessary to maintain safety and security at the facility. *Id.* If those measures are reasonably related to the orderly management of the facility, they are not considered punishment for the crime a pretrial detainee is charged with committing. *Id.* A particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose. *See Bell v. Wolfish*, 441 U.S. 520, 538, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Supreme Court has emphasized that enforcement of those measures is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell,* 441 U.S. at 540 n. 23, 99 S.Ct. 1861 (quoting *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)) (internal quotation marks omitted).

Besides measures to ensure the effectiveness of pretrial confinement, pretrial detainees can also be punished for any misconduct during the pretrial confinement, provided that the punishment is not based on the underlying crime. *Rapier*, 172 F.3d at 1003. However, due process requires that the pretrial detainee first receive notice and an opportunity to be heard before being punished for a pretrial confinement infraction, including by being placed in segregation or lockdown. *Id.* at

Page **7** of **13**

1004-05. As the Seventh Circuit has summarized: "a pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard . . . [b]ut no process is required if he is placed in segregation not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (internal citation omitted).

Here, Defendants do not seem to dispute that Plaintiff was not afforded any procedural due process before the E-South lockdown. Rather, they argue that those procedural safeguards were not constitutionally required because the lockdown was a security measure reasonably related to a legitimate governmental goal: ensuring the facility's safety, given the recurring problems with razors being broken and batteries being removed. While the Court agrees that the initial decision to place inmates on lockdown and to deprive them of privileges was most likely rationally related to the legitimate, non-punitive purpose of discovering the missing battery and ensuring the safety of the facility, a reasonable jury could find that its extension for up to 30 days exceeded the time necessary to ensure that legitimate goal. This inference is supported by Defendants' statements and the length of the lockdown.

Specifically, in response to detainees' complaints about the lockdown, Defendant Sellers told them that "action needed to be taken because someone continued breaking razors and removing the batteries, which was a recurring problem in the E-South cell block and other housing units. (Doc. 55, ¶¶ 14-15). This "statement is ambiguous; its wording is equally consistent with a punitive purpose and with a preventive purpose." *See Higgs*, 286 F.3d at 438. Moreover, Defendant Schmidt's response to Plaintiff's grievance that "you were in possession of a contraband during the search, and a report was filed" and that his "privileges are just that, a privilege, and they can be taken away" also supports a finding of a punitive disciplinary lockdown as opposed to a security lockdown to ensure the facility's safe and orderly operation. (Doc. 55-5, pp. 38-39). Further,

Page **8** of **13**

Defendants stated that the lockdown "is no longer in effect," but did not explain why its extension up to 30 days was necessary or what prompted its termination at that time.

Construing the record in the light most favorable to Plaintiff, a reasonable jury could infer from those statements and the length of the imposed lockdown that Defendants purported to punish Plaintiff and his co-detainees for an infraction as opposed to securing the safety and orderly management of the facility. *See Roundtree v. Dart*, No. 23-2576, 2025 WL 401207, at *2 (7th Cir. Feb. 5, 2025) (noting that the pretrial detainee's indefinite segregation could be inferred to have "crossed the line to punishment").

Defendants cite *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849 (7th Cir. 2017) and *Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) for the proposition that temporary loss of privileges during a security-based lockdown is precisely the type of administrative restriction courts have repeatedly upheld as non-punitive. While this statement is accurate, it is inapplicable in this case because the record supports a finding that the 30-day lockdown was not imposed for security purposes but to punish the detainees for the missing batteries.

Defendants also point out that during the lockdown, Plaintiff was provided with a mattress, blanket, sheet, clothing, and running water, and, following the initial period of lockdown, detainees were allowed one hour out of their cells per day on an individual basis. However, the conditions of confinement during the lockdown are immaterial to the extent that the lockdown was imposed as punishment for the detainees' misconduct rather than to further the legitimate governmental purpose of securing the safety and orderly operation of the facility. *See Johnson v. Murray*, No. 23-1805, 2024 WL 208152, at *2 (7th Cir. Jan. 19, 2024) (explaining that "the atypical-hardship analysis does not apply to pretrial detainees" and that pretrial detainees are entitled to due process procedural safeguards when "segregated as punishment for committing a major rule infraction").

Page **9** of **13**

The Seventh Circuit is clear that Plaintiff was entitled to notice and an opportunity to be heard before the imposition of a punitive lockdown. Because Defendants do not argue, and the record does not show, that Plaintiff received a notice and an opportunity to be heard before the decision to extend the lockdown and loss of privileges for 30 days, Defendants may have violated Plaintiff's due process rights as a pretrial detainee. Accordingly, Defendants are not entitled to summary judgment.

*Personal Involvement*

Defendants further allege that they are entitled to summary judgment because the record does not support a finding of their individual involvement in the imposition of the lockdown. The Court disagrees.

Defendants' Statement of Material Facts and the supportive affidavits do not include any allegations affirmatively denying their personal involvement in the decision-making process or the imposition of the alleged unconstitutional lockdown. Schmidt attested that on January 28, 2024, during his assigned shift, he became aware of the missing battery in E-South housing unit, and that he "responded to the security concern related to the missing battery." (Doc. 55-3, p. 1). Further, Plaintiff testified that Schmidt was the officer who announced the lockdown. Viewing this evidence in the light most favorable to Plaintiff, it is reasonable to infer that Schmidt was personally involved in the decision-making process and enforcement of the lockdown.

Sellers attested that he was the Madison County Captain and that his "involvement with respect to the E-South lockdown was supervisory in nature." (Doc. 55-4, p. 1). However, that conclusory statement of a supervisory involvement does not preclude a finding of liability under § 1983. It is true that Sellers cannot be held liable simply because he was the supervisor of the individuals directly involved in an alleged constitutional violation. *See Bostic v. Murray*, 160 F.4th

831, 841 (7th Cir. 2025) ("simply being atop an organizational food chain does not make a supervisor liable for a subordinate's unconstitutional conduct"). However, supervisors can still be liable for their decision-making that results in the alleged constitutional violation. *Id.* at 843 (finding that the supervisor of a probation officer who allegedly raped a probationer had sufficient personal involvement in the constitutional violation when the supervisor's choices allowed the probation officer to continue supervising female probationers and thus allowed the rape to occur).

During his deposition, after the detainees complained to Schmidt about the imposition of the lockdown, Defendant Sellers spoke to them and stated: "I have to do something . . . about this. Because someone keeps breaking the razors, tak[ing] the battery." (Doc. 55-2, p. 8). This record allows an inference that Sellers, who was a Captain with supervisory responsibilities at Madison County on January 28, 2024, had some personal involvement in the decision to impose or extend the lockdown and strip detainees of their privileges.

*Qualified Immunity*

Defendants further argue they are entitled to summary judgment on qualified immunity grounds. Government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To evaluate a claim of qualified immunity, the Court engages in a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. Id. The two questions may be considered in either

order. *Volkman*, 736 F.3d at 1090 (citing *Pearson v. Callahan*, 555 U.S. 223, 236–42, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

Here, Defendants are not shielded by qualified immunity. It was clearly established at the time of the lockdown that pretrial detainees could not be subjected to punitive lockdowns without notice or an opportunity to be heard. *See Higgs*, 286 F.3d at 438–39 (explaining that pretrial detainees "cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard" and finding that questions of fact prevented the grant of summary judgment in favor of prison officials when the record was ambiguous as to whether the 34-day lockdown segregation during pretrial detention was punitive or preventative); *Johnson*, 2024 WL 208152, at *2 ("a pretrial detainee, [who] was segregated as punishment for committing a major rule infraction, . . . was entitled to the procedural safeguards of due process."). Therefore, summary judgment is not appropriate on qualified immunity grounds.

<u>*Recovery of Compensatory or Injunctive Relief*</u>

Finally, Defendants argue that Plaintiff cannot recover compensatory or injunctive relief because he alleges only loss of privileges and has not suffered a physical injury. Plaintiff's request for injunctive relief, however, has already been denied earlier in this case. (Doc. 6). As to compensatory damages, it is true that §1997e(e) bars their recovery for mental and emotional injury absent a showing of physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003). However, the Seventh Circuit has clarified that the limitation applies only to compensatory damages and does not extend to nominal or punitive damages involving no physical injury. *Id.* Here, Plaintiff has asserted a violation of his constitutional rights, which "is itself a cognizable injury, regardless of any resulting mental or emotional injury." *Id.* Accordingly, §1997e(e) does not bar nominal or punitive damages for Plaintiff's alleged deprivation of his constitutional rights.

Defendant also argues that Plaintiff is not entitled to punitive damages because there is no evidence of malice or reckless disregard for Plaintiff's constitutional rights. However, Plaintiff's testimony and Defendant Schmidt's response to Plaintiff's grievance also allow an inference otherwise.

Accordingly, Defendants are not entitled to summary judgment due to Plaintiff's lack of physical injury.

<u>**Conclusion**</u>

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 55) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: April  20, 2026**

_s/_ _Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**